UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| David Dutton,<br><br>    Plaintiff(s),<br><br>v.<br><br>Zachary Williams, et al.,<br><br>    Defendant(s). | Case No. 3:24-cv-01006<br><br>Judge Waverly D. Crenshaw, Jr.<br>Magistrate Judge Alistair E. Newbern |

## INITIAL CASE MANAGEMENT ORDER

Pursuant to this Court's Local Rule 16.01, counsel for all parties have met and conferred to discuss the matters addressed in Federal Rule of Civil Procedure 26(f). Agreements reached by counsel or the parties' differing positions are memorialized in this joint proposed initial case management order, which reflects the case management preferences of Magistrate Judge Newbern and the presiding District Judge.

A calendar date shall be proposed for each deadline.

**A.    JURISDICTION:** The Court has jurisdiction pursuant to **28 U.S.C § 1343**

**B.    BRIEF THEORIES OF THE PARTIES:** *These statements shall briefly summarize the parties' positions and shall not be a recitation of the pleadings or argument of the claims.*

**PLAINTIFF:**

On August 17, 2023, David Dutton, a 75-year-old disabled driver, was wrongfully stopped and arrested by Deputies Zachary Williams and Syler Warley of the Rutherford County Sheriff's Department. While returning home from playing pool, Dutton, who has disabilities, was pulled over for a minor issue with his taillight. Despite clear evidence that Dutton was not under the influence, including his medical conditions such as Type II diabetes, back problems, and disabilities, the deputies insisted on administering standard field sobriety tests that are unreliable for individuals over 65 or those with physical disabilities. When Dutton struggled with these

tests due to his age, medical conditions, and disabilities, the deputies ignored this exculpatory information and proceeded to arrest him for DUI without probable cause.

The deputies' actions violated Dutton's Fourth Amendment rights, as there was no reasonable suspicion or probable cause to justify his arrest. Dutton's blood test later confirmed that he had no narcotics or alcohol in his system. During the interaction, Dutton remained cooperative and coherent. However, the deputies chose to pursue a DUI charge based on faulty assumptions and their failure to account for Dutton's medical issues, disabilities, and age, which rendered the field sobriety tests invalid.

Additionally, Rutherford County is liable for failing to train its deputies on how to appropriately handle individuals with disabilities or medical conditions that could affect their performance on standard sobriety tests. The county's deliberate indifference to proper training protocols directly led to the violation of Dutton's constitutional rights. The misconduct of Deputies Williams and Warley, combined with the systemic issues within the sheriff's department, caused Dutton to suffer a wrongful arrest, emotional distress.

The violations of the plaintiff's constitutional rights under the Fourth Amendment to the United States Constitution, and the conduct of each individual defendant, were directly and proximately caused by the actions and/or inactions of Rutherford County.

**DEFENDANT:**

**Cpl. Zachary Williams ("Cpl. Williams"):**

Cpl. Williams had, at a minimum, reasonable suspicion to initiate a traffic stop of Plaintiff's vehicle based on the reasons set forth in his incident report, including a broken headlight, a broken taillight, and an observation of Plaintiff's vehicle breaking the outside lane of travel.[1] Such traffic stop was further supported by probable cause and was otherwise lawful. Cpl. Williams observed during Plaintiff's interaction with Dep. Warley that Plaintiff had extremely slow movements and attempted to hand Dep. Warley his debit card instead of his license. Cpl. Williams also observed that Plaintiff was unsteady on his feet when exiting his vehicle.

Prior to administering Standard Field Sobriety Tests ("SFSTs"), Cpl. Williams conducted a medical evaluation of Plaintiff, including examining Plaintiff's eyes and asking Plaintiff various medical questions. During said medical assessment, Cpl. Williams observed that Plaintiff appeared disoriented, had droopy eyes, would repeatedly smack his mouth to re-salivate, and was slow in speech. With respe00ct to Plaintiff's alleged disabilities, Plaintiff informed Cpl. Williams that he "quit checking" his insulin and that he only administers insulin when he feels like he needs it and that he has a disc that he has "been dealing with for forty-five years" but that he can still get around fine and does not take any medication for his back. Plaintiff never mentioned his alleged vertigo despite being asked about any medical problems. Cpl. Williams had no reason to believe that any medical conditions or disabilities or any effects of Plaintiff's age would cause Plaintiff to

---

[1] Commencing with the traffic stop itself, the circumstances of said traffic stop are captured on video via dashcam or bodycam.

2

perform below standard on SFSTs. Cpl. Williams' administration of SFSTs in these circumstances was objectively reasonable.

Plaintiff did not perform up to standard on the Walk and Turn Test, One Leg Stand Test, Lack of Convergence Test, Modified Romberg Test, or Finger to Nose Test. Further, during the Horizontal Gaze Nystagmus Test, Cpl. Williams observed that Plaintiff's pupils were constricted for the lighting conditions and had no visible reaction to light. Upon searching Plaintiff's vehicle, Cpl. Williams found bottles of cholesterol medication and Viagra.

Cpl. Williams arrested and charged Plaintiff on DUI based on the totality of the circumstances. The arrest and charging of Plaintiff were based upon probable cause and were otherwise lawful. The probable cause determination made by Cpl. Williams was objectively reasonable in light of the circumstances. Although subsequent testing of Plaintiff's blood sample by the TBI did not detect alcohol or a certain set of drugs, the TBI only tested Plaintiff's blood sample for a limited number of drugs and the medications found in Plaintiff's vehicle were not included in the drug test panel.

Cpl. Williams' involvement with Plaintiff ended upon his execution of the arrest warrant and he did not participate in or influence any further actions or inactions taken with respect to Plaintiff.

### **Dep. Syler Warley ("Dep. Warley"):**

At the time of the events alleged in Plaintiff's Complaint, Dep. Warley was an officer in training and was assigned to Cpl. Williams. Dep. Warley provided assistance to Cpl. Williams during the traffic stop of Plaintiff but did not conduct any of the SFSTs or conduct the medical assessment of Plaintiff. Dep. Warley was not leading the investigation of Plaintiff and merely observed and assisted as directed by Cpl. Williams. Dep. Warley did not make the probable cause determination to arrest Plaintiff, nor did he execute the arrest warrant of Plaintiff. Dep. Warley did not initiate, participate in, or influence any charges brought against Plaintiff. The actions of Dep. Warley were objectively reasonable under the circumstances.

### **Rutherford County, Tennessee (the "County"):**

No Rutherford County custom, policy, rule, regulation, procedure, or official decision, or the absence thereof, including the absence of or failure to adopt additional or different employee training, supervision, discipline, or screening practices, was the moving force behind any alleged constitutional violation and, therefore, the County cannot be liable on any of Plaintiff's claims. Further, no causal link exists between any policy, custom, or lack of policy or custom of the County and the deprivation of a constitutional or federal right. The County cannot be liable under *respondeat superior* principles. The County does not have a custom or practice of failing to train officers on distinguishing between medical conditions and drug/alcohol impairment, a policy or custom of failing to use alternate sobriety tests for persons with medical conditions, or a "custom whereby officers are encouraged to employ bogus field sobriety tests to fabricate probable cause against persons over the age of sixty-five who are disabled" as alleged by Plaintiff. The County provides constitutionally adequate training to its officers with respect to the subject matter of

Plaintiff's allegations. In the alternative, any alleged failure to train by the County is merely negligent and does not constitute deliberate indifference such that Plaintiff can prevail on his failure to train theory. Further, Plaintiff cannot rely on his personal claims alone to identify a "custom" of the County. To the extent Plaintiff alleges that the SFSTs were improperly administered or improperly applied to his individual circumstances, the same was merely an isolated event and not so permanent and well settled as to constitute a custom or usage with the force of law.

    **C.**    **ISSUES RESOLVED:** *State all agreements reached by counsel and not otherwise addressed by this Order, including agreements as to jurisdiction, venue, and other matters as appropriate.*

Jurisdiction and Venue.

    **D.**    **ISSUES STILL IN DISPUTE:** *Briefly summarize all issues still in dispute including, for example, liability and damages.*

Damages and liability.

    **E.**    **INITIAL DISCLOSURES:**

The parties shall exchange initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) on or before **November 22, 2024**

    **F.**    **CASE RESOLUTION PLAN AND JOINT STATUS REPORTS:**

The parties shall develop a plan for resolution of the case that includes at least two independent attempts to resolve the case. The first attempt shall occur no later than 120 days from the initial case management conference, which is **March 13, 2025.** By no later than that date, the parties shall submit a joint report to advise the Court that the parties made a good faith effort to resolve the case. The report shall state the specific steps taken toward case resolution, including that an offer or demand has been made and responded to and that counsel have discussed the parties' positions. The parties shall have conducted enough discovery or otherwise exchanged sufficient information to evaluate and discuss settlement substantively. The fact that discovery is ongoing or that a dispositive motion is pending does not relieve the parties of this requirement. If the parties request referral for pro bono mediation or to a Magistrate Judge for a judicial settlement

conference, they must make that request by motion. The motion shall include a statement as to why private mediation is not feasible and, if a judicial settlement conference is requested, why that is the preferable means of resolving the particular case. An updated joint report, including whether the parties have scheduled mediation or another form of ADR, shall be filed no later than 60 days before the deadline for the filing of dispositive motions.

The parties may request referral to a member of the Court's ADR Panel for pro bono mediation by filing a motion that states why private mediation is not feasible and why referral to a mediator will materially advance the resolution of the case.

### G. DISCOVERY:

The parties shall complete all written discovery and depose all fact witnesses on or before **August 29, 2025** Written discovery shall proceed promptly (unless otherwise provided for herein). Discovery is not stayed during dispositive or other motions, unless ordered by the Court.

No motions concerning discovery are to be filed until after counsel have spoken in a good faith effort to resolve any dispute(s).

If the parties are unable to resolve a discovery dispute after conferring in good faith as required by the Court's Local Rule 37.01 and the District Judge's case management preferences, counsel shall file a motion for resolution of a discovery dispute to request a discovery dispute telephone conference. Not later than two days before the conference, the parties shall file a joint statement of the discovery dispute that states the particular requests or responses at issue, summarizes counsel's good-faith discussions, and briefly addresses the parties' positions. Each party's position statement shall be limited to no more than three pages per issue. The parties may attach documents for review that will be useful to the Court's understanding of the dispute. If the parties are unable to reach a resolution of the dispute after the conference, the Magistrate Judge

will set a schedule for discovery motion briefing. If a party files a discovery motion before a discovery dispute conference has been held, the motion will likely be terminated.

All motions related to fact discovery shall be filed by no later than **August 29, 2025**

### H. MOTIONS TO AMEND OR TO ADD PARTIES:

Any motions to amend or to add parties shall be filed no later than **June 13, 2025**.

Any motion to amend must be accompanied by the proposed amended pleading, which shall be included as an exhibit to the motion. Before filing the motion to amend, counsel for the moving party shall discuss the proposed amendment with all other counsel and shall state in the motion to amend whether the motion is opposed. Any motion to amend must comply with Local Rules 7.01 and 15.01.

### I. DISCLOSURE AND DEPOSITIONS OF EXPERT WITNESSES:

The plaintiff(s) shall identify and disclose all expert witnesses and expert reports on or before **August 29, 2025.** The defendant(s) shall identify and disclose all expert witnesses and expert reports on or before **October 24, 2025**. All expert witnesses shall be deposed on or before **November 26, 2025**.

No supplemental expert reports or rebuttal experts shall be allowed, except upon order of the Court for good cause shown.

### J. NEXT CASE MANAGEMENT CONFERENCE:

The parties may request a case management conference by filing a motion that identifies all issues to be discussed and the parties' positions. If the parties request extensions of case management deadlines, they shall include all proposed extended deadlines in the motion. The parties shall state whether they request an in-person or telephonic conference.

K.  **DISPOSITIVE MOTIONS:**

Dispositive motions shall be filed by no later than **January 5, 2026.** Responses to dispositive motions shall be filed within 28 days after the filing of the motion. Briefs or memoranda of law in support of or in opposition to a dispositive motion shall not exceed 25 pages. Optional replies may be filed within 14 days after the filing of the response and shall not exceed 5 pages. No motion for partial summary judgment shall be filed except upon leave of court. Any party wishing to file such a motion shall first file a separate motion that gives the justification for filing a partial summary judgment motion in terms of overall economy of time and expense for the parties, counsel and the Court. In all other respects, the provisions of Local Rule 56.01 shall govern.

L.  **ELECTRONIC DISCOVERY:**

The parties shall discuss any anticipated electronic discovery before the initial case management conference. If the parties reach an agreement on how to conduct electronic discovery in this case, Administrative Order 174-1 need not apply. Any agreement among the parties to address electronic discovery shall be reduced to writing, signed by counsel, and filed as a stipulation of agreed-upon electronic discovery procedures. If the parties request the Court's approval of their agreement, they shall file it was a proposed agreed order with the appropriate accompanying motion. In the absence of an agreement, Administrative Order 174-1 will apply.

M.  **MODIFICATION OF THE CASE MANAGEMENT ORDER:**

Any motion to modify the case management order or any case management deadline shall be filed at least seven (7) days before the earliest affected deadline. If the parties agree, the motion may be filed up to the earliest affected deadline. The motion must include a statement confirming that counsel for the moving party has discussed the requested modification or extension with opposing counsel and whether there is any objection to the motion. The motion (even if a joint

7

Case 3:24-cv-01006    Document 20    Filed 11/06/24    Page 7 of 8 PageID #: 98

motion) must also include: (i) all deadlines, even unaffected deadlines, so that it will not be necessary for the Court to review previous case management orders in consideration of the motion and (ii) a statement that the requested extension will still conform to the requirements of Local Rule 16.01(d)(2)(f) that no dispositive motion, including response and replies, be filed later than 90 days in advance of the target trial date.

### N. REQUESTS TO SEAL DOCUMENTS:

Any party requesting that documents or portions of documents be sealed must demonstrate compelling reasons to seal the documents and that the sealing is narrowly tailored to those reasons. The motion to seal, even if unopposed, must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations." *Beauchamp v. Fed. Home Loan Mortg. Corp.*, No. 15-6067, 2016 WL 3671629, at *4 (6th Cir. July 11, 2016) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–06 (6th Cir. 2016)). Protective orders should not provide that document produced in discovery and designated as "confidential" will automatically be sealed upon filing or use at trial. Any such language in a proposed protective order will be stricken and may result in denial of the motion to enter the protective order.

### O. ESTIMATED TRIAL TIME AND TARGET TRIAL DATE:

The jury trial of this action is expected to last approximately seven days. The target trial date is June 16, 2026.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge

8

Case 3:24-cv-01006    Document 20    Filed 11/06/24    Page 8 of 8 PageID #: 99